IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RICHARD GONZALES,

    Plaintiff,

vs.                                              No. CIV 97-984 HB/LCS

CITY OF LAS CRUCES,

    Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter comes before the Court on Defendant City of Las Cruces' Motion for Summary Judgment, filed on April 15, 1998 *(Doc. 26)*. The Magistrate Judge, having considered the Motion, the memoranda submitted by the parties and the applicable law, proposes finding that the Motion is well-taken and recommends that it be granted.

### Proposed Findings

Plaintiff Richard Gonzales was terminated from his position as an undercover police detective by the City of Las Cruces on March 13, 1996. Gonzales' termination resulted from an administrative investigation of an incident that took place in September, 1995. The material facts of that incident are not in dispute. Gonzales, as an agent of the Metro Narcotics Agency, was called to the scene of a drug-related arrest by Border Patrol agents. Gonzales took possession of over $20,000 in seized currency, as well as several other items of property. Gonzales did not sign for the currency or log the entry into his evidence sheet. The currency was not deposited into the Metro Narcotics Agency safe and Gonzales did not inform any supervisor of the currency.

Instead, Gonzales admits that he placed the currency in his own personal locker.

The next week, Gonzales met with Carmen Garza, the attorney of the arrested drug suspect. Gonzales admits that he attempted to negotiate a deal in which the criminal charges would be dropped if the defendant agreed to forfeit most of the currency and a boat. Garza reported Gonzales' offer to the City of Las Cruces and the assistant district attorney as a clear violation of New Mexico law. Gonzales claims that he had authorization from the assistant district attorney to make the offer, but the City of Las Cruces had received evidence from both Ms. Garza and the Assistant District Attorney that indicated that Gonzales acted without authorization.

Gonzales' supervisor, Lt. Perea, began an investigation into the matter. In the course of the investigation, Perea uncovered reports of several other incidents in which Gonzales may have violated policies or committed criminal offenses. These incidents are as follows:

<u>The Ramzy Seizure.</u> Gonzales seized $418 in currency in small denominations from a defendant in May, 1995. Gonzales did not log the $418 on his evidence sheet and did not deposit the money in the evidence safe. Gonzales admits that when he finally returned the evidence on September 28, 1999 in response to an inquiry, Gonzales converted the currency into larger denomination bills.

<u>The Cecilia Gonzales Seizure.</u> Gonzales was involved in the arrest of Cecilia Gonzales in June, 1995. Two officers reported that Defendant seized at least $400 at the time, but the currency was never logged into Gonzales' evidence log.

<u>The Wright Seizure.</u> Gonzales was involved in the April, 1995 arrest of Lacy Wright. The arrestee claims to have had about $4,500 that was seized at the time of arrest. Another police officer, Tom England, claims that Gonzales seized a large amount of cash from the

2

arrestee. Gonzales' evidence log does not indicate any money seized.

Gonzales was suspended with pay on September 29, 1995 after these allegations came to light. Prior to this incident, Gonzales had been disciplined on two previous occasions for conduct unbecoming a police officer. Police Chief Pete Hampton conducted a termination hearing on March 13, 1996 and recommended to City Manager Bruno Zaldo that Gonzales be terminated in a memorandum dated March 15, 1996. In the memorandum to Zaldo, Hampton discussed several of the allegations against Gonzales, including the Ramzy, Gonzales and Wright seizures. Hampton concluded his memorandum recommending termination:

> I disagree with Lt. Perea that Agent Gonzales committed Conduct Unbecoming a Police Department Employee on all of the dates he has indicated, but do concur that he violated this policy on May 12, 1995 [sic][1], when he attempted to dismiss criminal charges in lieu of having property released to the Metro Agency.

City Manager Zaldo concurred with Police Chief Hampton and terminated Gonzales effective March 13, 1996.

Plaintiff Gonzales is of Hispanic national origin and was forty years old at the time of his discharge. Plaintiff also presents evidence that he is an alcoholic and that his employer referred him to an alcohol abuse therapist in the Spring of 1995. Plaintiff alleges that he was discharged because of either his national origin, his age, or his disability, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"); the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634, ("ADEA"); and the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213 ("ADA"). In addition, Plaintiff alleges that the City of Las Cruces subjected him to a hostile work environment because he came under intense media scrutiny from September 14,

---

[1]Police Chief Hampton's memorandum repeatedly confuses the dates of the incidents. In fact, this incident occurred on September 22, 1995.

3

1995 until he was suspended with pay on September 29, 1995, with no support from the city. Finally, Plaintiff claims that his termination constituted the public policy tort of retaliatory discharge, *see Vigil v. Arzola*, 102 N.M. 682, 689, 699 P.2d 613, 620 (Ct. App. 1983), and that retaliatory discharge by a governmental entity is actionable under the New Mexico Tort Claims Act, N.M. STAT. ANN. §§ 41-4-1 to -29.

Defendant has moved for summary judgment on the grounds that Plaintiff has failed to establish a *prima facie* case for any of the types of discrimination that he alleges. Alternatively, Defendant alleges that Gonzales was discharged for numerous incidents of misconduct on the job. Defendants have moved to dismiss the state law claims on the grounds of governmental immunity. In the response memorandum, Plaintiff agrees that the state law claims should be dismissed because the waiver of governmental immunity in the Tort Claims Act, N.M. STAT. ANN. § 41-4-12, does not apply. *See* Resp. to Def.'s Summ. J. Motion *(Doc. 28)* at 23. As the parties agree that governmental immunity has not been waived, the state law claims should be dismissed.

Summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). To withstand a motion for summary judgment, the burden is on the nonmoving party to identify specific facts in the interrogatories, affidavits, depositions and other evidence on file that would indicate a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). To establish a genuine issue of material fact, the evidence must be sufficient, when viewed in the light most favorable for the nonmoving party, for a reasonable jury to return a verdict in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 238 (1986).

4

1.  Plaintiff's Title VII (National Origin) Discrimination Claims and ADEA claims

Title VII and ADEA disparate treatment claims are analyzed by applying the burden-shifting approach of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). Plaintiff must first establish a prima facie case of discrimination. If Plaintiff can establish a prima facie case, the employer has the burden to come forward with a nondiscriminatory explanation for the action. If the employer presents such an explanation, the burden then shifts back to the Plaintiff to show that the employer's reason is mere pretext and is unworthy of belief.

Plaintiff must show three elements to establish a prima facie case of discrimination based on disparate treatment in enforcing work rules: 1) that he is a member of the protected class; 2) that he suffered an adverse action by the employer for violating a work rule; and 3) that he was treated less favorably than similarly situated non-minority employees. *See Aramburu v. Boeing Co.*, 112 F.3d 1398, 1403 (10th Cir. 1997). Plaintiff clearly meets the first two elements for his Title VII claims because he is of Hispanic origin and was terminated by the City of Las Cruces for violation of Las Cruces Police Department and Metro Narcotics Agency rules. Plaintiff also qualifies for membership in the protected class of the ADEA because he was forty years old at the time he was terminated. *See* 29 U.S.C. § 630. But Plaintiff fails to present evidence that would establish a genuine question of material fact as to the third element, that he was treated less favorably than others outside the protected class.

To be similarly situated, other employees outside the protected class must violate work rules of comparable seriousness. *See Elmore v. Capstan*, 58 F.3d 525, 529-30 (10th Cir. 1995). Plaintiff has not come forward with evidence of any other police officer who takes possession of over $20,000 in currency, fails to log it into evidence, fails to turn it into the evidence safe, places it in his personal locker, and then proceeds to negotiate personally with defense counsel to drop

5

charges if the defense will forfeit the currency. Abstaining from prosecuting a crime in exchange for anything of value is a criminal offense in New Mexico. *See* N.M. STAT. ANN. § 30-22-6. None of the other "comparable" employees cited by Plaintiff in his affidavit (Ex. 2 to Pl.'s Resp. at ¶¶ 51-59) come anywhere close to this level of seriousness. Further, for the purposes of his Title VII claims, several of the "comparable" individuals are also Hispanic and thus cannot support a disparate treatment claim. The only employee whose conduct would be even remotely comparable to Gonzales would be Officer Acosta, who is both Hispanic and over forty years old. According to Acosta's affidavit, which Plaintiff submitted in support of its response,

> When Mr. Gonzales made the offer, I was present. I made the offer to Ms. Garza to include the boat as part of the deal. I did so sarcastically as I was not happy with the offer, but nothing happened to me and I was allowed to retire without incident.

Aff. of Jerry Acosta *(Doc. 47)* at ¶ 12. A sarcastic comment under these circumstances is not at all comparable to Gonzales' work rule violation.

In addition to failing to establish that other employees committed comparably serious work rule violations, Plaintiff has not shown that the employees were similarly situated in other relevant ways, such as work history. *See David v. City & County of Denver*, 101 F.3d 1344, 1359-60 (10th Cir. 1996). Plaintiff had been disciplined twice before for committing Conduct Unbecoming a Police Officer, and there was evidence that Plaintiff mishandled large amounts of money on at least three other occasions. Although Police Chief Hampton did not find that Gonzales had committed misconduct on all of the dates listed, that does not mean that those other incidents were irrelevant to the discipline imposed. To the contrary, violations of other work rules that might not by themselves constitute formal police misconduct are highly relevant to determine the discipline imposed for a contemporaneous incident of serious misconduct. Plaintiff presents no evidence at all that the "comparable" employees had a series of similar charges leveled

against them or had been disciplined previously.

Because Plaintiff has failed to show that he was treated less favorably than similarly situated employees outside the protected class, he fails to state a *prima facie* case of disparate treatment. Plaintiff also fails to establish pretext, as his conduct would give the City of Las Cruces good cause to terminate him.

2. Plaintiff's ADA Claim

Plaintiff claims that he suffers from alcoholism and that he was terminated because he was an alcoholic. To the extent that alcoholism may be a disability under the ADA, conduct caused by the alcoholism is not protected in any way, and an employer may terminate an employee for disability-caused misconduct. *See Den Hartog v. Wasatch Acad.*, 129 F.3d 1076, 1086 (10th Cir. 1997). Therefore, Plaintiff cannot use his disability to excuse any of his wrongful conduct. Similarly, an employer need not take any action to reasonably accommodate alcoholic employees. *See id.*

Plaintiff's ADA claim fails for the same reason as do his national origin and age discrimination disparate treatment claims. Plaintiff does not show any direct evidence of discriminatory animus against alcoholic employees. To the contrary, the evidence on the record shows that Gonzales was referred to treatment by his employer in an effort to assist him in his recovery. Plaintiff also fails to present evidence of disparate treatment because, as stated above, Plaintiff presents no evidence that similarly situated employees were treated differently when they committed equally serious misconduct.

3. Hostile Work Environment Claim

Plaintiff alleges that he was subjected to adverse media attention from the time the charges against him arose (sometime between September 22, 1995 and September 26, 1995) until he was

7

suspended with pay on September 29, 1995.  Plaintiff claims that the City of Las Cruces' failure to support him or to protect him during this period constituted a "hostile work environment." This innovative argument has absolutely no merit.  First, Plaintiff does not present a scintilla of evidence that this media attention influenced his work environment at all.  *See* Ex. 2 to Def.'s Resp. at ¶¶ 39-40. There is no evidence in Gonzales' affidavit that he was harassed at work by anyone.  Second, Plaintiff does not give dates when this adverse media attention arose. Plaintiff certainly does not meet his evidentiary burden of showing that any harassment at work during those few days was sufficiently pervasive to alter the terms and conditions of his employment.

4.  State Law Claims

Plaintiff admits that the state law claims do not fall under the waiver of governmental immunity found in N.M. STAT. ANN. § 41-4-12.  I note that the City of Las Cruces is a governmental entity that is entitled to immunity under the New Mexico Tort Claims Act unless a waiver applies.  *See* N.M. STAT. ANN. § 41-4-4.A.  Therefore, these claims should be dismissed.

Recommended Disposition

I recommend that Defendant City of Las Cruces' Motion for Summary Judgment, filed on April 15, 1998 *(Doc. 26)*, be granted.  Summary judgment should be granted to Defendant City of Las Cruces as to all counts of Plaintiff's Complaint, and this case should be dismissed with prejudice.  Timely objections to the foregoing may be made pursuant to 28 U.S.C. §636(b)(1)(C). Within ten days after a party is served with a copy of these proposed findings and recommendations that party may file with the Clerk of the District Court written objections to such proposed findings and recommendations.  A party must file any objections within the ten day

period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

_____
LESLIE C. SMITH
UNITED STATES MAGISTRATE JUDGE

F:\Brian\97-984pfd